# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 6:12-cr-00002-8 |
| v. | MEMORANDUM OPINION |
| RICHARD PHILLIP ALLEN A/K/A JOLLYIGOR2010@HOTMAIL.COM, *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on the government's motion seeking revocation of the release order entered by Magistrate Judge B. Waugh Crigler as to Defendant Richard Phillip Allen ("Defendant"). Defendant is one of nine co-defendants who have been indicted for their alleged participation in a child pornography distribution conspiracy. After careful consideration, and for the reasons that follow, I will grant the government's motion.

## I. BACKGROUND

### A. Procedural History

Defendant, who resides in Redondo Beach, California, was indicted in the Western District of Virginia on January 25, 2012, for one count of conspiracy to distribute, receive, possess, and access with intent to view child pornography in violation of 18 U.S.C. §§ 2252(a)(2), (a)(4)(B), (b)(1), (b)(2). He was permitted to self-surrender to the Central District

of California Probation and Pretrial Services Office on February 1, 2012.[1] Defendant appeared on that date and, pursuant to an order entered by the magistrate judge there, was subsequently released on a $50,000 bond signed for by Defendant's stepson.

On February 15, 2012, Defendant made his initial appearance in the Western District of Virginia, at which time he entered a plea of not guilty. At the hearing, the government orally moved to detain Defendant pursuant to 18 U.S.C. § 3143(a)(2). Thereafter, the magistrate judge held a detention hearing at which the parties proffered evidence. At the conclusion of the hearing, the magistrate judge denied the government's motion and issued an order releasing Defendant on the same $50,000 bond with certain additional conditions of release intended to limit Defendant's access to children and the internet.[2] However, upon the government's representation that it intended to "appeal" his release order, the magistrate judge entered an oral order staying that release order. The following day, on February 16, 2012, the government timely filed the "appeal" presently before me in which it seeks revocation of the release order. The parties have concluded their briefing on the issue, and on May 9, 2012, they filed a joint notice informing the Court that they wish for the government's motion to be resolved on the basis of their submissions without a hearing.

### B. Factual Background

The following factual representations are based on the indictment and the contents of the parties' briefs. The investigation that led to Defendant's arrest began in November 2010 when the FBI discovered that a person in Indiana was trading large amounts of child pornography

---

[1] The government points out that Defendant's self-surrender was negotiated by his counsel and a local FBI agent; the local Assistant United States Attorney and the United States Department of Justice were not consulted.

[2] Those conditions included, among many other restrictions, that Defendant shall have "no access to children under 18 years old, to the internet, no internet service by wire or wifi available at or near [Defendant's] home or any workspace – no cell phone [with] wifi."

images depicting the sexual abuse of infants and toddlers. Subsequent execution of search warrants on email addresses led the FBI to the email address at the center of the alleged conspiracy, "adslyfox555@gmail.com." The FBI's analysis revealed that large amounts of child pornography were sent from "adslyfox555@gmail.com" to approximately fifty-eight other email addresses on a regular basis between October 3, 2006 and April 6, 2011. The emails sent from "adslyfox555@gmail.com" contained links to sequentially numbered compressed files depicting minors engaged in sexually explicit conduct. Evidently, the person using that email account is variously known as "Andy Danilov," "Danilov" and "Cinemaboy," all of which are names used by Danilov when sending child pornography emails to the group.

Examination of Danilov's email account further disclosed that members were added to the group after finding contact information for "Cinemaboy" on websites that depicted child erotica and child pornography, or after communicating shared interests on social media networking websites. Individuals then contacted "Cinemaboy" and were added to the email group. Once a person was added to the group, that individual would receive emails that contained links to the sequentially numbered compressed files. After joining the email group, members, including Defendant, were given the opportunity to affirmatively withdraw.

On April 5, 2011, Danilov sent an email to fifty-six email addresses including "jollyigor2010@hotmail.com," the email address used by Defendant. The email subject line stated: "Attention!" The text of the email stated: "In connection with problems become [sic] frequent at mailing my material, I ask to answer this letter to one of versions [sic]: - To stop mailing, or - To continue mailing." In response, Defendant replied by email indicating that he wished to continue receiving emails, specifically stating "continue mailing - yes yes yes." As part of the conspiracy, Defendant also communicated with Danilov, thanking him for the emails.

Defendant further suggested that he would spread the emails and content to others. Specifically, on February 9, 2011, Defendant sent an email to Danilov. The subject of the email read: "U ARE THE MAN - U ARE THE KING - THANKS." That email stated, in part: "what a happy surprise when I opened my e-mail - I do not know what I can do to repay u - do u want me to send u stuff over the e-mail - do u already got everything - i am sure you do - thanks and I will spread this goodwill to all I can."

On November 17, 2011, the FBI executed a search warrant on Defendant's home. At that time, according to the government, Defendant made several statements to law enforcement admitting his participation in the conspiracy for which he has subsequently been indicted. Among Defendant's many purported admissions was his divulgence that he used the "jollyigor2010" email address to communicate with Danilov and that he was the only person with access to the computers in his house. Additionally, Defendant admitted to using the internet and his email address primarily to obtain and view child pornography. Defendant also stated that he had been viewing child pornography for four to five years.

On the date the search warrant was executed, several computers and other electronic evidence were seized from Defendant's home. According to the government, forensic analysis of Defendant's computers and hard drives has since revealed over 500,000 images of suspected child pornography and 24,000 video clips of suspected child pornography. Further, the analysis revealed that out of this collection, approximately 53,000 images of child pornography were distributed and received by members of the email group.

Shortly after the search warrant was executed, Defendant met with a psychologist, Dr. Hy Malinek ("Dr. Malinek"), who, Defendant contends, is a nationally-recognized expert on the relationship between child pornography and "hands-on" sexual offenses. Dr. Malinek and an

4

associate conducted a psychological examination of Defendant, which included a series of interviews as well as psychological and physiological tests. Dr. Malinek prepared a six-page initial report dated January 12, 2012, and also prepared a declaration dated March 27, 2012.

## II. LEGAL STANDARD

Under the Bail Reform Act, a judicial officer shall order the detention of a defendant pending trial if, after conducting a hearing, the officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). When, as here, "the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). However, in such a case, the district court need not hold a second detention hearing. *See United States v. Boyd*, No. 2:09-cr-00222-20, 2010 WL 200277, at *1 (S.D.W. Va. Jan. 14, 2010). The factors guiding the court's decision are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

5

Generally, "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Stewart*, 19 F. App'x at 48. However, as is the case in the instant matter, a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," 18 U.S.C. § 3142(e)(3), *inter alia*, "an offense involving a minor victim under . . . [18 U.S.C. §] 2252(a)(2) . . . ," *id.* § 3142(e)(3)(E). The rebuttable presumption in 18 U.S.C. § 3142(e) has the effect of shifting to the defendant the burden of producing evidence establishing that he will appear and that he does not pose a danger to the community.

### III. DISCUSSION

Based on the offense for which he has been indicted, there is no dispute over the fact that the aforementioned presumption applies to Defendant. In support of its motion, the government contends that there is no condition or combination of conditions that will reasonably assure the safety of members of the community (specifically, children) from Defendant should he be released.[3] Further, the government contends that the presumption has not been overcome by Defendant. Conversely, Defendant maintains that he has proffered or submitted sufficient evidence to overcome the presumption in favor of detention and establish that there are conditions—namely, those conditions previously imposed in the release order—that will reasonably assure the safety of members of the community. I review the evidence and the parties' arguments in light of the previously enumerated factors set forth in 18 U.S.C. § 3142(g).

---

[3] The government has made no representation that there is a risk of Defendant's nonappearance.

6

### A. Nature and Circumstances of the Offense Charged

As I have already described, the forensic analysis of Defendant's computers and hard drives revealed an extremely large collection of suspected child pornography images and video clips numbering in the hundreds of thousands. The government maintains that the offense for which Defendant has been indicted is particularly vile in light of the nature of the images that he received, possessed, and distributed.[4] However, nothing will be gained for the purposes of this memorandum opinion by describing those images in detail; the ultimate issue before me is whether there is a set of conditions that can reasonably assure the safety of the community. While I agree with Defendant that the resolution of that question does not hinge exclusively on the quantity or quality of the images that Defendant allegedly acquired, viewed, and circulated, I disagree that the nature of the instant offense should not weigh in favor of detention. Indeed, many of the images purportedly show the graphic and violent sexual abuse of prepubescent children, toddlers, and infants. Thus, the nature of the offense for which Defendant has been indicted does not militate in favor of pretrial release, and Defendant has set forth no evidence to rebut that conclusion.

### B. Weight of the Evidence

It is unnecessary to recount the evidence against Defendant that I have previously described, for the government has set forth enough of it to establish probable cause that Defendant conspired to receive, possess, and disseminate child pornography. Indeed, Defendant does not endeavor to contest the weight of the evidence against him at this juncture. Accordingly, this factor too cuts against Defendant's contention that he should be granted pretrial release.

---

[4] The government accurately points out that Congress has seen fit to designate the offense for which Defendant has been indicted—the receipt and distribution of child pornography—as a crime of violence. *See* 18 U.S.C. § 3156(a)(4)(C).

### C. History and Characteristics of Defendant

The government submits that in 1974, Defendant was investigated for (and possibly charged with) lewd conduct. While the government takes no position on the substantive relevancy of this crime, it observes that Defendant was arguably untruthful when he told pretrial services in California that he had never been arrested. Because the government has not substantiated its allegations regarding this potential offense, I will discount it in my consideration of Defendant's criminal history, and I will accept, for the purpose of resolving the government's motion, Defendant's assertion that he never came into contact with the criminal justice system prior to the instant prosecution.

Separately, Defendant, who is 65 years old, maintains that he has strong family and community ties to California, that he has lived in the same house since the 1950s, that he has been a practicing accountant for over thirty years, that he has no drug or alcohol abuse issues, and that he has reported for court every time he has been directed to do so thus far. While I agree with the government that Defendant should be afforded little credit for showing up in court in light of the consequences of not doing so, I find that Defendant's other history and characteristics weigh in favor of granting him pretrial release.

### D. Nature and Seriousness of the Danger to Others

As previously mentioned, the government argues that there is no set of conditions that would successfully deter Defendant from continuing to commit child pornography offenses while he is on pretrial release. The government adds that because Defendant would be living alone were he released, there is little reason to believe that he would cease engaging in this sort of behavior. Additionally, based on the graphic and violent nature of the suspected child pornography images possessed by Defendant, and in light of the sheer volume of those images,

8

the government maintains that Defendant has an undeniable interest in the sexual abuse of very young children, and therefore that he poses a significant risk of danger to children in the community. Thus, the government believes Defendant poses a risk of committing a hands-on offense

According to the declaration of Dr. Malinek, the clinicians who have seen and treated Defendant since his indictment, including Dr. Malinek, do not believe that Defendant poses a risk of committing a hands-on offense against a child. Further, Dr. Malinek attests that none of the risk factors associated with sexual recidivism—of either the hands-on or hands-off variety—are present in Defendant's case. Additionally, Dr. Malinek states that Defendant "has been compliant with medications, wants to be helped, recognizes the seriousness of his offense, and feels relieved that he has been apprehended." In sum, it is Dr. Malinek's opinion that Defendant is very unlikely to pose a significant risk of danger to the community.[5]

Dr. Malinek notes that there is no evidence that possession of child pornography leads individuals to engage in hands-on recidivism. However, even if I accept that statement as true, I agree with the government that because possessing child pornography also victimizes children, it is not enough to inquire into a given defendant's likelihood of committing a hands-on offense while on pretrial release. Rather, it is necessary to examine whether there are conditions that can be imposed that will also help thwart any potential danger the defendant might pose to the community by committing further hands-off offenses. Dr. Malinek references a now well-known study conducted by Dr. Michael Seto in which Dr. Seto examined 2,630 online offenders over the course of six years and found that only 7% were charged with a new child pornography

---

[5] Although Dr. Malinek believes Defendant is unlikely to reoffend and chalks Defendant's collection of child pornography up to hoarding as much as to a sexual interest in children, the facts tell a different story. Indeed, Defendant has an evidently long-standing interest in images depicting the sexual abuse of children, regardless of whether he has ever committed a hands-on offense and irrespective of whether, clinically speaking, he can be classified as a pedophile.

9

offense. However, one study, the contents of which have not been presented to me nor argued in any depth by the parties, is not conclusive. Moreover, even if Dr. Seto's research is accurate, a statistically low rate of recidivism among those offenders charged with child pornography crimes does not obviate my obligation to conduct an individualized assessment of Defendant's risk of danger to the community.

While Defendant has assertedly lived most of his life as a law-abiding citizen, I find that an individual who views the sort of child pornography that Defendant has been indicted for acquiring and viewing and who masturbates to it, as Defendant has admitted doing, has an interest in the depiction of the sexual abuse of children. And in the instant case, there is a risk that Defendant's interest could lead him to reoffend. In support of this conclusion, I note that Defendant admitted to uploading and sharing child pornography on peer-to-peer networks like GigaTribe. Defendant also chatted with individuals on GigaTribe, and he permitted them to download child pornography from his collection. The government highlights one chat, dated October 23, 2011, in which Defendant stated: "going to start sitting my sisters [sic] kids = boy 4 n [sic] girl 6 = any advice – for first time." The fact that, as the government readily concedes, Defendant has no sister does not vitiate the significance of the inference that can easily be drawn from this statement—namely, that within the past year, Defendant may have been contemplating the commission of a hands-on offense (or, at the very least, fantasizing about doing so). The burden rests with Defendant to explain this statement, and the Court may not disregard it merely because he does not have a sister. What prompted the statement? Was Defendant referring to a neighbor's children? Or was it total fantasy? And what is the proximity of Defendant's home and office to children? Satisfactory answers to these questions must be given before I can be convinced by a preponderance of the evidence that Defendant would not represent a danger to

the community. In the end, the potential danger Defendant poses, especially to children, counsels against setting conditions for his pretrial release.

## IV. Conclusion

While Defendant's history and characteristics indicate that he might have been a candidate for pretrial release, I find that the nature of the offense for which he has been indicted, the weight of the evidence against him, and the seriousness of the danger he poses to the community militate in favor of his pretrial detention. Ultimately, Defendant has failed to rebut the presumption imposed by 18 U.S.C. § 3142(e) that there is not a set of conditions that can reasonably assure the safety of the community were he to be released pending trial.

For the aforementioned reasons, the government's motion seeking revocation of the release order shall be granted. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __18th__ day of May, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE